441 P.2d 745

STATE ex rel. John B. SPEER, Relator,

v.

DISTRICT COURT FOR SIERRA COUNTY, Honorable Garnett R. Burks, Judge, Respondent.

No. 8648.

Supreme Court of New Mexico.

June 10, 1968.

---

John B. Speer, pro se.

McAtee, Marchiondo & Michael, Albuquerque, for respondent.

## OPINION

MOISE, Justice.

On July 12, 1961, an order was entered in cause No. 6137 on the docket of the District Court of Sierra County, entitled In the Matter of the Petition of James C. Moon, et al., for the Organization of the Lakeshore City Sanitation District, wherein the court ordered, as follows:

"That the Lakeshore City Sanitation District is declared to be organized under the laws of the state of New Mexico.

"That its corporate name by which in all proceedings it shall hereafter be known is the Lakeshore City Sanitation District.

"That Frank E. McCord is designated a director to act until the first biennial election.

"That Mrs. James C. Moon is designated a director to act until two years after the first biennial election.

"That James C. Moon is designated a director to act until four years after the first biennial election.

"That the form of the oath of office and corporate surety bond to be filed by the board of directors shall be as set forth in Exhibit A and shall be in the amount of One Thousand Dollars ($1000.00).

"That the directors shall receive no compensation for their services."

It is evident that the procedure followed was that provided in Ch. 80, N.M.S.L. 1943 (now appearing with minor changes as §§ 75–18–1 to 75–18–32, N.M.S.A.1953), and that the order was entered pursuant to Sec. 8 (now appearing with minor changes as § 75–18–8, N.M.S.A.1953) thereof, which reads in pertinent part, as follows:

"The judges of election shall certify the returns of the election to the district court having jurisdiction. If a majority of the votes cast at the election are in favor of the organization, the district court shall declare the district organized and give it a corporate name by which, in all proceedings, it shall thereafter be known, and designate the first board of directors elected, and thereupon the district shall be a governmental subdivision of the State [of New Mexico] and a body corporate with all the powers of a public or quasi-municipal corporation."

It has now been made to appear before us that on January 19, 1968, there was filed in said cause No. 6137, a motion to intervene on behalf of Harold L. Freedman and Gladys H. Freedman, his wife, and Recreations Unlimited, Inc., asserting a substantial interest in the District by virtue of ownership of lands therein. At the same time a Complaint in Intervention was filed wherein it is alleged, among other things, that the order of July 12, 1961 is void because of fraud practiced upon the court, and the court was asked to invoke

its inherent powers and determine whether the district was validly or legally organized.

On March 29, 1968, after a hearing on the motion to intervene, the trial court entered its order in which it found and ordered, as follows:

"1. That good cause exists to permit Harold L. Freedman, Gladys H. Freedman and Recreations Unlimited, to intervene in the within cause and to file their said amended complaint in intervention.

"2. That a prima facie showing has been made that a fraud was perpetrated upon the court in obtaining the order forming the Lakeshore City Sanitation District.

"3. That the court should exercise his discretion in ascertaining if a fraud has, in fact, been committed upon the court, and if the court, after a hearing of the matter on its merits does so find, the court will thereupon decree that the orders heretofore entered, approving the organization and formation of the Lakeshore City Sanitation District, are null and void.

"4. That the court has the inherent power to exercise his discretion to inquire as to whether a fraud has or has not been perpetrated upon the court in any proceedings upon which the court is called upon to exercise jurisdiction, and the court in such inquiry is not bound as to any limitation as to time.

"5. That the so-called validating statutes (§ 75-18-40, New Mexico Statutes Annotated, 1953 Compilation), does not cure nor can it cure a fraud which has been perpetrated upon the court."

With the proceedings in this posture, relator, claiming to be the holder of certain bonds assertedly issued by the District in 1963, brought this action in this court seeking an order addressed to respondent directing that he proceed no further to consider the issue of the validity of the formation of the Lakeshore City Sanitation District in 1961 as sought in the complaint in intervention. We issued our alternative writ of prohibition; the case has been fully briefed and argued, and is now ripe for determination.

■ Although relator advances four reasons for making the writ permanent, we perceive that we need only notice and discuss one. Our attention is directed to the following appearing in § 8, Ch. 80, N.M.S. L.1943 (now, with minor changes, § 75-18-8(H), N.M.S.A.1953):

"If an order be entered establishing the district such order shall be deemed final and no appeal or writ of error shall lie therefrom, and the entry of such order shall finally and conclusively establish the regular organization of the said district against all persons except the State of New Mexico, in an action in the nature of a writ of quo warranto, commenced by the attorney general within thirty days after said decree declaring such district organized as herein provided, and not otherwise. The organization of said district shall not be directly or collaterally questioned in any suit, action or proceeding except as herein expressly authorized."

Respondent would avoid the literal application of the section by an argument that it could not have been the intention of the legislature in adopting the quoted language to thereby deprive courts of their inherent power to vacate a judgment obtained by fraud on the court.

In this connection it might be observed that he is proceeding as if Rule 60(b) (§ 21-1-1(60) (b), N.M.S.A.1953) were applicable. A reading of the rule discloses that final judgments may be reopened because of fraud only if the motion to do so is made within a year after entry of the judgment. However, specific provision is made for courts to entertain independent actions for relief from judgments because of fraud upon the court. The Freedmans and Recreations Unlimited are evidently relying on this provision in making their attack on the 1961 order holding the district to be legally organized.

In support of their argument they cite those holdings by this court to the effect that we will not adopt an interpretation of a statute which will make its application unreasonable and absurd. See Montoya v. McManus, 68 N.M. 381, 362 P.2d 771 (1961); Hahn v. Sorgen, 50 N.M. 83, 171 P.2d 308 (1946); Nye v. Board of Com'rs of Eddy County, 36 N.M. 169, 9 P.2d 1023 (1932). What they fail to do is to show wherein the statute is ambiguous or requires interpretation and, further, how a holding that it limits the time for attack on the ground of fraud results in absurdity or unreasonableness. In our view, neither is true. How the language could have been made much clearer is difficult to imagine. It says specifically that the order establishing the district is final and not appealable, and finally and conclusively establishes that the district has been regularly organized, subject only to attack by the state through quo warranto during a period of 30 days. No exception is made for claims of fraud. If this were not enough, it adds that with this single exception the organization of the district may not be directly or collaterally brought into question. Again—no mention of an additional exception for fraud.

Neither do we agree that to give the statute this effect is in any sense unreasonable or absurd. To the contrary, the reasons for doing so are cogent and compelling. These we perceive to be to make possible the borrowing of money with assurance to the lenders that they are dealing with a qualified borrower which, in turn, would have the effect of reducing the rate of interest which would have to be paid on money obtained for public improvements. That this is a proper consideration was recognized by this court in Oliver v. Board of Trustees of Town of Alamogordo, 35 N.M. 477, 480, 1 P.2d 116, 118 (1931), where we find the following said:

"* * * Independently of said section, the right would exist in any interested party to resort to equity to stay the threatened action, if facts warranting the exercise of equitable jurisdiction were shown to exist. And but for said section such right would inhere, not alone for the thirty-day period limited in the act, but for the normal statutory period of limitation applicable to such a suit, unless lost by the existence of facts creating an equitable estoppel.

"Short periods of limitations on the right to attack proceedings such as these are present almost invariably in legislation of this kind. 5 McQuillin, Municipal Corp. (2d Ed.) pp. 826 and 854. The reason therefor is well stated by the court in the case of Edmonds v. Town of Haskell, 121 Okl. 18, 247 P. 15, 19, where it said:

"'This statute has a twofold purpose, and a twofold effect, viz: That of stabilizing and maintaining the credit of a town in the commercial world, and thereby benefitting property owners by maintaining a sound credit for their town, and on the other hand it carries assurance to contractors and investors in town securities that the legal obligations of the town must be met.'

"Such provisions are usually designated in the decisions as statutes of limitations. Plagmann v. City of Davenport, 181 Iowa 1212, 165 N.W. 393, and McKone v. City of Fargo, 24 N.D. 53, 138 N.W. 967. * * *"

More directly in point is In re Dexter-Greenfield Drainage District, 21 N.M. 286, 310, 154 P. 382, 389 (1915), where we also find acceptance of a literal application of a short limitation period for review and the reasons therefor, in the following:

"The above and foregoing review of the drainage law and of the proceedings of this case are sufficient to show that the appellant in this case undertook to raise the question of the sufficiency of the petition at a time long after the time provided for by the statute. The act provides a full and fair opportunity for all interested parties to appear and raise the very question which the appellant

undertook to raise at another and later time. Undoubtedly, from a practical standpoint, it was the intention of the Legislature to have these questions determined before the expenditure of large sums of money in the making of the survey and preparation of the plans, profiles, and specifications, as provided in section 39 above referred to. We are of the opinion that the orders of the court entered in this proceeding, finding at the conclusion of the hearing provided by law for that purpose that the petition was sufficiently signed, as above indicated, * * * and the same could not be attacked in any method whatever, except as provided by the statute, to wit, by appealing from the order sustaining the petition within 30 days from the entry thereof, and that any other method of attack, whether in the same proceeding, or in any other proceeding, constitutes a collateral attack, and is unavailable."

Further, after citing and quoting from People v. Waite, 213 Ill. 421, 72 N.E. 1087 (1904); O'Neill v. Yellowstone Irrigation District, 44 Mont. 492, 121 P. 283 (1912), and Miller v. Perris Irrigation District, 85 F. 693 (C.C.S.D.Cal.1898), to which cases we also refer, the court had the following to say, at page 312 of 21 New Mexico Reports, at page 390 of 154 Pac.:

"* * * It is the law that confers the jurisdiction, and not the court, and public policy requires that where the jurisdiction of the court, as provided by statute, is based upon the ascertainment and determination of certain facts, and a full and fair opportunity is given to all parties interested to be heard thereon, and a right of appeal afforded final determination of those facts, constitutes res adjudicata and cannot be inquired into at any other time, or by any other method than that provided by the statute. If this were not true, and the practice adopted by the appellant in this case were allowed, parties could remain silent until vast amounts of money were expended in the construction of these drainage districts, and then come forth and raise these facts and cause a possible waste of this money, when they might just as well have raised it before the expenditure."

Also see Town of Coloma v. Eaves, 92 U. S. 484, 487–88, 23 L.Ed. 579, 580 (1876), where, in discussing a short statute of limitations in an act authorizing issuance of bonds, the following language was used:

"* * * Everything that tended to depress the market value was adverse to the object the Legislature had in view. It could not have been overlooked that their market value would be disastrously affected if the distant purchasers were under obligation to inquire, before their purchase or whenever they demanded payment of principal or interest, whether certain contingencies of fact had happened before the bonds were issued; contingencies the happening of which it would be almost impossible for them in many cases to ascertain with certainty. * * *"

See also Ventura Port Dist. v. Taxpayers, Property Own., etc., 53 Cal.2d 227, 1 Cal. Rptr. 169, 347 P.2d 305 (1959).

Compare Taos County Board of Education v. Sedillo, 44 N.M. 300, 101 P.2d 1027 (1940); Board of Education of School Dist. No. 5 in San Juan County v. Patton, 43 N.M. 107, 86 P.2d 277 (1938); White v. Board of Education of Silver City, 42 N.M. 94, 75 P.2d 712 (1938); White v. Curry County Board of Education, 36 N.M. 177, 10 P.2d 590 (1932), in each of which the statute limiting time for attacking bond proceedings was upheld and proceedings commenced after expiration of the period fixed in the statute were held to be barred. See also Plagman v. City of Davenport, 181 Iowa 1212, 165 N.W. 393 (1917); Addis v. Kansas City, 143 Kan. 25, 53 P.2d 809 (1936); Rockwell v. Junction City, 93 Kan. 1, 142 P. 268 (1914); City of Chickasha v. O'Brien, 58 Okl. 46, 159 P. 282 (1916).

Burns v. District Court of the Eighteenth Judicial District, 144 Colo. 259, 356 P.2d

245 (1960), is a recent case we have found and is of particular interest because the limitation period and method for attacking organization of a recreation and park district in Colorado is in almost identical language to that contained in § 75–18–8(H), supra.

The action was an original proceeding in the nature of certiorari in the Supreme Court to obtain review of the District Court's action in establishing the district and sought a declaration that it was null and void. The decree establishing the district was entered October 30, 1959. Thereafter, before the passage of 30 days, a request was made for the attorney general to institute quo warranto proceedings. He refused. The petition in certiorari was filed on December 29, 1959. The limitation statute was held to effectively prevent the petitioners from attacking the organization through certiorari. The announced reason was the "need for accelerating contract negotiations and the taking of other action looking to accomplishing the purposes of the district, free of the fear of subsequent attack of the district's legal existence."

Although the attacks on the organization were not based on alleged fraud, they were not materially different in that they asserted shortcomings in the form of the petitions, failure to take evidence, defects in the notice, and other similar matters. The Colorado court announced no exceptions to the application of the statute.

We see no reason for excepting fraud from the operation of our statute. By doing so, we do not concede, as argued by respondent, that we are condoning or placing a premium on fraudulent conduct. We see no reason, in the light of the considerations already noted for a thirty-day limitation period, to hold that an attack such as that attempted here, some seven years after the district was organized, should in any manner be considered. It was beyond the court's jurisdiction to have done so and, accordingly, its action was properly prohibited by us. State ex rel. Board of

County Com'rs of Grant County v. Burks, 75 N.M. 19, 399 P.2d 920 (1965); State ex rel. Miller v. Tackett, 68 N.M. 318, 361 P. 2d 724 (1961).

Rule 60(b), supra, specifically excepts independent actions attacking judgments for fraud. However, we are impressed that the limitation statute (§ 75–18–8(H), supra) was intended to apply even though fraud might be asserted at some later date; in other words, that its provisions take precedence over any right preserved in Rule 60(b) to make an attack for fraud upon the court without limitations as to time. See Committee Note of 1946 to subdivision (b) of Rule 60, as set forth in 6 Moore's Federal Practice (2d Ed.) 4008 (1965); 7 Moore's Federal Practice (2d Ed.) 221, § 60.18[8] (1965); also compare Freeman, Judgments (5th Ed.) 532, § 266 (1925).

Although our decision is based on the fact that the action was not commenced within the time provided by the applicable statute, we should observe that quo warranto by the attorney general is the only method for getting a review and determination of the court's action in entering its order pursuant to § 75–18–8(G), supra. See Community Ditches, etc. v. Tularosa Community Ditch, 16 N.M. 750, 120 P. 301 (1911). The rule there announced has been followed uniformly since. See City of Albuquerque v. Water Supply Co., 24 N.M. 368, 174 P. 217, 5 A.L.R. 519 (1918), and Gutierrez v. Middle Rio Grande Conservancy District, 34 N.M. 346, 282 P. 1, 70 A.L.R. 1261 (1929). To the same effect are Miller v. Perris Irrigation Dist., supra; Williams v. McClellan, 119 Cal.App.2d 138, 259 P.2d 12 (1953); Burns v. District Court of the Eighteenth Judicial District, supra; Bishop v. Shawnee & Mission Twps. Turkey Cr. M.S.D., 184 Kan. 376, 336 P.2d 815 (1959). Compare State ex rel. Pickrell v. Downey, 102 Ariz. 360, 430 P.2d 122 (1967), and West End v. State, 138 Ala. 295, 36 So. 423 (1903), which are quo warranto proceedings.

It follows from what we have said that respondent should be permanently prohibited from in any manner considering the validity of the formation of the Lakeshore City Sanitation District as contemplated in its order of March 29, 1968, or from in any way altering, changing, modifying or revoking the order establishing the organization of said district.

It is so ordered.

CHAVEZ, C. J., and NOBLE, COMPTON and CARMODY, JJ., concur.